1660728 Imperium Insurance Company v. Shelton & Associates May it please the Court. The Court requested of the parties that we be able and prepared to address the impact of One Beacon Insurance v. T. Wade Welch & Associates upon the arguments made in this case. Obviously, as that opinion addressed a prior knowledge exclusion but did not address material misrepresentations, prior knowledge exclusion I do believe is certainly relevant for multiple reasons. They are somewhat interrelated, so it's hard to dissect them into completely separate items. The first being that the Court in One Beacon made a distinction between the question of foreseeability and the question of an actual breach. In arguments before this Court, Imperium has taken the position that the mere existence of a breach in and of itself is sufficient to trigger the exclusion because any reasonable attorney would have known of the breach and expected any breach to potentially lead to a claim. That's not what One Beacon did. That claims made really has no meaning if you're going to say, did you have knowledge that you had done the act, whatever act it is that's now being charged as malpractice during the claims period, the claim made period. If that's enough to trigger the prior knowledge exclusion, then unless you were sleepwalking when you committed the malpractice, you're going to not have coverage on anything. And that seems to be the position and the problem with One Beacon was it was way overstated what they were trying to make the policy mean. And when you match up the two policies, although they don't have the thing about going back to 1995, when you match up the language, it's very similar. So it's a little surprise you all didn't cite it because even though it's Texas law versus Mississippi law, no one has pointed out to me, and indeed the District Court relied upon other states' law, no one has pointed out to me some uniqueness of Mississippi law that would make this different. So to me, it seems very relevant. It is very relevant, Your Honor. And specifically, back to this interrelation of these issues, by restricting the interpretation the way Imperium argues it to simply an act, just like Your Honor said, any reasonable attorney, based on that standard, would have expected the claim to be made. Well, in that instance, essentially what you're doing is you're eliminating any valid malpractice claim. Right. Because at the end of the day, the only thing you're going to have coverage for is a frivolous claim because a reasonable attorney wouldn't expect that to turn into a claim. So you get your defense cost for the frivolous claim, which is worth something, but it's probably worth what you're paying premiums on. And for that reason, you know, one beacon goes beyond whether or not the wrongful act occurred or the person should have known of the wrongful act and into whether they should have reasonably expected, or in the language of one beacon, whether it was reasonably likely that there would actually be a claim filed, not whether it was possible for a claim to exist. And whether the claim was possible, whether the claim could have occurred, or in the language of the district court in this case, on three different occasions, whether the facts might later turn into a claim is not the same standard espoused by one beacon. It's not the same standard imposed in the actually case. I mean, I would point out one beacon was Texas law, right? I don't believe there's any material difference in the determination of whether coverage would be illusory based on the same facts under Mississippi law, particularly in light of the same reasoning from Achtole that you're essentially offering and telling an insured that you have retroactive coverage, but that you don't have retroactive coverage over anything that might possibly be a claim. What difference does it make that the application for insurance in one beacon was filed after the discovery order and the conduct that ultimately was covered occurred before the insurance, occurred after the insurance had actually been applied for? And in this case, every wrongful act that occurred, occurred before the insurance was applied for. I think for purposes of providing the analysis, it makes no difference because the question is whether you're limited simply to knowledge of the wrongful act, which in both cases is alleged to have occurred prior to the application. Well, it does make a difference in terms of the seriousness. In other words, one, a reasonable person could expect a malpractice claim on three facts. On one fact, perhaps not, but on three facts, yes. In one beacon, you had one fact that occurred that was relatively amendable as an error, and then that's when he applied for insurance. Then the serious occurrence occurred after he'd applied for insurance, so that was not counted against his knowledge with respect to the application. Well, to clarify my point, Your Honor, it would not make a difference as to the standard that is applied, whether or not you consider foreseeability separate from the knowledge of the breach. I agree with Your Honor that it would be relevant to the consideration of whether a reasonable attorney should have expected that it would, in fact, turn into a claim. The problem to me with the district court opinion in this case is it ignores the fact that pretty much any time you lose a case as a lawyer, your client could point to something you could have done better. That's not the standard for malpractice, at least not in my knowledge, particularly in Texas, but I think that's true in Mississippi as well. In other words, on the course of litigation, you make decisions, you make strategy calls, you do things, you don't do things, and somebody could always say, well, you could have deposed this extra guy, you could have sent this extra interrogatory, you could have made a bigger deal out of this document. You lose a case, right? It seems to me that this argument here that the opposing counsel is making is that you're never going to have coverage for those cases because you could always expect someone to point to something you could have done differently. Maybe even they did point it out. So all of that is excluded, and we're back to, again, the frivolous lawsuit. Maybe the guy who won. Didn't the district court grant rescission because Shelton's firm just didn't file a dox litigation? They just didn't file it, and then they tried to resurrect it, and they were denied. I mean, that's not something that you look at in, yeah, exactly. Well, Your Honor, the court, in making that decision, took as true the allegations of Imperium, not the allegations and the evidence in the light most favorable to my client. The evidence in the light most favorable to my client. Excuse me, but the point is, whatever your, that's what the allegations favorable to your client are, I didn't screw up, my client screwed up. My client being conveniently dead on both counts now. And, you know, the facts speak for themselves. You missed the deadline. Without information or the ability to meet the deadline, which would lead a reasonable attorney to believe they would not be subject to a malpractice claim because they didn't commit any failure in the first place. Well, he didn't, he didn't, he had a chance to contact the client, as I recall. I mean, there was a, there was a gap in time here between when he knew that the, that materials were supposed to be filed and when they were not filed. And we have documented at least two separate occasions where they requested of the client to bring that information, and two separate occasions where the client failed to do so. And so we have it. Six months, in other words, was there a long gap between the time that you requested he bring it in, and then that six months occurred, before he brought it in, and there's no indication that I saw in the briefs that you had ever prompted him to bring it in earlier. You let, made one phone call, bring in your information. Six months goes by, and one day she pops in and brings the information. Is that? This brings us back to this question of what a reasonable attorney would expect. And I think that in cases involving claims of legal malpractice, there's a particular temptation by the court to substitute its opinion as an expert juror for that, that it would not do in a medical malpractice case. I mean, this, that might be true in cases like even perhaps the summary judgment question here where you're, where Mr. Shelton's attorney was in the very courthouse on the day that the very hearing occurred, and she said, she lets everything fly right by. That might have been an arguable, although the Mississippi Supreme Court and Court of Appeals found otherwise. But this was an open and shut, you file your claim, you get the money. Because that's what that Vioxx pot of money is all about. And again, Your Honor, the evidence before the court was that there had been multiple requests to the client to provide the information. The information was not provided by the deadline. Now, in conjunction with that, the court's opinion about rescission did not make any I mean, actually, Harbin, they knew about Harbin. They didn't rescind the policy. They simply excluded Harbin. So to me, that's reformation. That's not rescission. That's not taking the whole policy back. So even if we assume arguendo, that had they known about Chisholm, they would have excluded Chisholm like they did with Harbin. I don't think that would affect Tyler, because the policy would have still been in effect. And in fact, they knew about Harbin and didn't explore and say, well, do you have any other Vioxx people that you didn't submit stuff on time? They just proceeded forward. So we know they didn't rescind on Harbin. And so at most, that would affect the Chisholm claim. It wouldn't affect the Tyler claim, which was what my earlier questions were directed to, right? That was the testimony by the insurance representative who said that they would have issued an incident exclusion, not rescinded the policy. That would have limited only to the Chisholm claim. And so, and the court made no findings about the Tyler claim on the question of rescission in any fashion. And in fact, I believe the reason for that is the testimony by that insurance person was that that information might have only resulted in a higher premium, not even a claim exclusion or rescission. But back to the point, which your honors have already read in my briefing. At what point does an insurance company start to question an application where they have to grant exclusion after exclusion? Well, I'm just rhetorically asking. Well, if the record doesn't give us the answer, then summary judgment shouldn't have been granted. You know, that's up to the insurance company to prove, well, Harbin, we only did the exclusion, but if we'd known about Harbin and Chisholm, we would have rescinded. Actually, they haven't said that. They would have done the incident exclusion on Chisholm. Just going over the facts here, I mean, it's in the Tyler case. I mean, nobody responded to AFC's request for admissions. To AFC had moved to deem the unanswered requests admitted. This is what he knew at the time that he filed for malpractice insurance, that nobody made a motion on Tyler's behalf to rectify the failure to answer. At the hearing on the motion to have the requests admitted, they stated without authorization that Tyler had no answer whatsoever. The AFC had moved for summary judgment on the admissions. He knew that. Nobody submitted a response on Tyler's behalf to AFC's motion for summary judgment. On the day of summary judgment hearing, a Shelton attorney was present in the courthouse, told the hearing, and did absolutely nothing. Number eight, the state court granted summary judgment to AFC in the amount of $2.9 million on the basis of the admissions and the fact that Tyler had submitted no response to the motion for summary judgment. Now all of that is, you know, it's not like something that's inadvertent. And at that time, after all of those events had occurred, he applied for this insurance. Now, what is a reasonable person supposed to conclude from that? It seems to me that he knew that something that he had that much evidence had gone and neglected the case. He knew he better cover himself. Well, Your Honor, the point which is addressed in our brief is that my client did not enter into the case or begin representation in this matter until after the admissions had already been made. It's his firm. I mean, his agent. I mean, his firm. No, Your Honor. No one from my client's firm represented this client as of the date the requests for admissions were served, nor when they were due. They represented them in the prior bankruptcy matter, which was dismissed without prejudice. The case was refiled in circuit court with a former attorney from the firm who had opened his own practice. And my client did not begin representation of this client until almost three years after the request for admissions had been made. But you What he came in for was the motion to deem them admitted when they had already been admitted. Did he, I mean, the briefs are saying he knew all of those facts. I don't know whether he knew them or not, but that's what the briefs say. The citations to the record about those points are in my briefs, Your Honor. And there's a long footnote where I explain the fact that a bankruptcy court has no power to transfer a case from federal bankruptcy court to state court. It must be dismissed and then refiled. At that point, any prior admission on behalf of a client in the bankruptcy court is invalid. You have to have a new admission in the circuit court. When the new admission was made in the circuit court, it was not by my client. It was by a former attorney who used to work for him and had opened his own office. Now, the client later then fires that attorney, rehires my client, which occurred only after the request for admissions had been sent and had already been deemed admitted by failure to respond. So you're not here contradicting what you implied in your brief so your client received no notice of the summary judgment hearing? No, Your Honor. That occurred following my client's entry into the case. Exactly. And your brief averts that your client didn't know about the summary judgment hearing and I had to go back to their brief in the district court and the Mississippi Supreme Court in order to verify that you did receive a copy of that notice. There was a finding by the Mississippi Supreme Court about that which occurred after the circuit court that notice was given to his attorneys of record which included not only my client but other attorneys who were not my client. Correct. Now, all that being said... Your client still screwed up according to the Mississippi Court of Appeals. And so the question then becomes, if there's sufficient evidence of a wrongful act, then would a reasonable attorney have expected it? Would it have turned into a claim, not could it have been turned into a claim? Well, when you've got a snake of a client, what do you expect? This comes back to the question of the merits, whether the merits of the claim have any bearing as to whether a reasonable attorney would expect it to be filed. And if he had no defense, if there was no way he could have won the case... Excuse me, but you have time for rebuttal. Thank you, Your Honor. You've gotten at least an extra minute. Mr. Carmody. May it please the court. Your Honors, I would also like to address, based on the court's instructions, the impact of the One Beacon decision. And I believe that Judge Jolly's question is very crucial in understanding a distinction between the One Beacon case and the cases that are currently before this court. Can you first of all address whether you see Mississippi law as different from Texas law on this point? In other words, is One Beacon relevant? I believe it is relevant in that it actually reinforces the interpretation that the district court employed. Based on the court's request that we look at that, I went back and looked at that district court filings. And as referenced in your decision, Judge Haynes, the court adopted the interpretation that was urged by the insured law firm in that case, which was to say, look at the wrongful act and would a reasonable attorney believe a malpractice claim could result. And I think that's exactly what the district court in this case did. Now I apologize if my argument may have been overbroad, as Judge Haynes, you suggested in your question. But there's a key distinction, I think, here. You mentioned not taking a deposition or not taking some action and that judgment calls could lead to a claim for malpractice. What we're talking about here were not judgment calls. Responding to a motion for summary judgment to a reasonable attorney is not a judgment call. That is something that's required under the rules. Failing to appear at a hearing, deciding whether or not you are going to attend a hearing on a dispositive motion, that's not merely a judgment call. No, I'm not saying it is. What I'm saying is that your policy is really pretty worthless except to provide attorney's fees of defense in a completely frivolous case that no one could have possibly seen. And so it makes a claims made policy just pretty much useless. That's the problem and that's what one beacon was addressing. If you're going to say, did you do the act and do you know that you did the act, which is how your policy is worded too, it matches up very squarely, then of course you knew you did the act. And so then it's never going to be covered unless it's just ridiculous. I mean, you did everything perfectly and still lost and the claim is just ridiculous. I think there's two points there, Your Honor. As the court decided, the use of the word act in the definition of wrongful act does seem a bit overbroad. But as this court decided in one beacon, what you do is you look at the act that's alleged to have led to the not responding to a summary judgment motion in Tyler, the failure to submit a claims package by a court mandated deadline in Chisholm. Those aren't simply acts. Those are errors and omissions that are also included in the definition of wrongful act. Right, but I mean, there we have the problem that whether we ultimately believe the Shelton group, they have an argument that, for example, they didn't get notice of the hearing, that the court found otherwise doesn't change that they're saying, no, we didn't get it. Somebody may have gotten one of these three different law firms, but we didn't get it. And then on Chisholm, they're saying, we can't file a bunch of information that we don't have. And so we've all represented clients that haven't been as quick on the draw in responding to our requests as we would like. And you go and you try to get extensions of time and you keep calling the client and you're trying to get, and you're just, the client isn't giving you what you need. And I think that is the other point that I would raise, Your Honor, is that an insurance company such as Imperium is not merely concerned about insuring for a claim where a verdict is actually entered against its insured. It's also concerned about the risk, because of the duty to defend, risks associated with potential claims. Because defense verdicts get entered all the time. Insurance companies don't have to pay the verdict, but they still have to pay the attorneys. And they have to pay the defense. And that's what part of what their concern is. And then on Harbin, why didn't you all do more of an investigation? Because you knew, by virtue of Harbin, that they're in this Vioxx goo. They didn't file on Harbin, rightly or wrongly, whatever the facts were. Why wouldn't you say, hey, how many other Vioxx people do you have, or we're going to do an exclusion for Vioxx, or we're going to charge a higher premium, because this looks like an area, as you say, where we might get a lot of claims, valid or otherwise? The application did, in fact, request information similar to what you're asking. Why Imperium chose not to do more of an investigation in Harbin, I don't know that there's any record, evidence in the record, that answers that question specifically. But what I would point to is the fact that that claim was reported, I believe, three days prior to the effective date of the policy. So there wasn't a great deal of time at that point for the insurance company to undertake an investigation. Is there any explanation for the timing of the application for this insurance coverage, apart from the fact that these events we're talking about had cumulated to that point? Did you offer any other reason to all of a sudden say, I need malpractice insurance? I believe, Your Honor, that Mr. Shelton had been insured under another company's policy. In fact, his policy that he submitted, I believe, was even on the paperwork for the prior company, Taurus Insurance. The insurance agent made a decision to put him with Imperium. The insurance carrier transferred from Taurus to Imperium, but the questions of materiality remained. From Imperium's perspective... But as I understand your answer, there is no evidence to assume that the motive for his taking out this particular policy at this particular time was related to these alleged malpractice events. None, Your Honor. None, Your Honor. But Mr. Shelton was still under a duty... But he apologized to Ms. Chisholm's executor, didn't he? He did. He did. That's in the record. That is in the record. In fact, Ms. Chisholm, her estate actually had multiple administrators during the time of the claim initially being brought to Mr. Shelton's attention and when the malpractice claim was originally filed. In fact, two of those administrators sought out Mr. Shelton to voice their displeasure. And I think that's a key factor with respect to the Chisholm claim. You mentioned there is, I think, a distinction between Tyler and Chisholm. I understand their defense in Chisholm is that, well, we couldn't do anything because they didn't give us the documentation. But you also knew that the representatives of that estate were coming to you and expressing displeasure. Well, you also knew that there was a plain deadline. That's correct. Exactly. And I think that's sort of where the similarities of the two are apparent. These were hard and fast deadlines. But let me ask you this. Would you agree that if we agreed with you on Chisholm, that is not dispositive of Tyler? Well, yes, it is. I think it would be as to rescission. As to rescission. But there's really no evidence that they would have rescinded. In fact, the evidence is they would have done an incident exclusion. And the court did not find rescission in Tyler, only found prior knowledge exception. And so unless we're going to indulge the notion that the whole policy would have been rescinded and therefore not present for Tyler, which is inconsistent with the evidence of what they did with Harbin, Chisholm shouldn't impact Tyler. I cannot offer an explanation for the district court's decision to not address rescission in its opinion. But if you look at the prior knowledge exclusion and the question in the policy application, they're both getting to the same point. Well, let me ask you this one question completely aside from the things we're talking about. And that is, is there a jurisdictional problem here because the amount pled in the state complaint is $50,000 and not $75,000? I don't believe so, Your Honor. The demand that was the suggestion on the face of the I would have to double check that complaint, but there was In excess of $50,000, it's referred to. Or $75,000, Your Honor. The complaint says in excess of $50,000, as I understand it from the record. In other words, $75,000 is not referred to in the Chisholm complaint. I believe there was a settlement demand at one point, Your Honor, indicating that plaintiff's counsel, certainly in excess of $50,000, that range between $50,000 and $75,000 would not trigger jurisdiction. But the complaint itself, and I would like to double check that, Your Honor. There was never any indication in our mind that the actual amount that the plaintiff hoped to recover in Chisholm exceeded the jurisdictional amount of the court. Certainly it was not an argument that Shelton raised in opposition. I don't find the district court's double opinion all that troubling because the facts in Chisholm are pretty clear cut. And my analysis was, if the policy is rescinded, it's rescinded, and there's no coverage for Tyler at all. That is correct, Your Honor. And isn't rescission an equitable remedy that the company can ask for in court, and there is not a proof requirement that we would have done less or more than deny coverage? That's correct, and I would add I'm equally untroubled by the district court's decision. Except the district court didn't say that. It didn't say in Tyler, hey, we've already rescinded in Chisholm, so we're good to go. It did not. But I think what's important to the point I was making was that those two, the exclusion and the policy application question, are really getting to the same point. Is there some instance of your representation of a client that could lead to a claim? We need to know that because that affects the materiality of our risk. And the evidence was in Tyler that Imperium may well have chosen to rescind it. The insurance agent was asked what would have happened, and his answer was it would have either resulted in approval pending an incident exclusion, a higher premium, or a denial to write the risk at all. And under Mississippi law, rescission is allowed, a policy may be voided, where an insured makes a misrepresentation on the policy, and that misrepresentation is material to the insurance company's decision to write the policy and the terms under which it writes the policy. And what were the misrepresentations specifically that you're relying on for the purposes of rescission? The failure to disclose the potential for a claim. What? What failure to disclose what facts? The failure to disclose that, with respect to Paul Tyler, Mr. Shelton's firm had failed to respond to a motion for summary judgment, had failed to appear at a motion for summary judgment. And while he felt his defense to that was adequate, that there was a lack of notice, that the circuit court had already expressly rejected that argument. Shelton was aware, no matter how truthful that position may be, or untruthful, no matter whether he believes he never got notice or not, he had full notice. But the circuit court had found that someone, a lawyer, got notice, not that Shelton got notice. They found that Shelton's attorneys, plural, had in fact gotten notice. And that, I think, Your Honor, goes back to the distinction with one beacon. One beacon, at the time the application was submitted, there was not a pending dispositive risk on the table for that attorney. He was merely under an order to supplement discovery. That he hadn't complied with. That he had not complied with, but his deadline to comply had not yet expired. And even then, as this court's opinion suggests, it was somewhat unusual for the court to take that step to actually dismiss. There is a distinction in our case. It's not draconian to dismiss a claim or to grant summary judgment where a party opposing the motion doesn't oppose it, doesn't appear, doesn't respond to a motion. Let me ask you, in connection with their saying they did not get notice, and you have the circuit court having found specifically on that issue of fact, as I understand it, and the Supreme Court having affirmed that, are they judicially, is Shelton judicially estopped from saying that he did not receive that? I don't know that he would be. I think there's a change in parties, the way judicial estoppel works in Mississippi. The party there was AFC. Now the party is the bankruptcy estate of Paul Tyler. Certainly, if I were the attorney for the estate, I would certainly point to those facts as supportive of my claim that he received notice. But in the context of this appeal, the significance of that fact is that Shelton knew it. He knew his argument that he didn't receive service had been rejected. He knew it a year in advance of submitting that application. So for the position he takes that, well, I wasn't served, so I couldn't foresee a malpractice claim. No, when a circuit judge rejects your argument, you certainly can. A reasonable attorney certainly can appreciate there's a risk that a malpractice claim might result in that situation. It's very similar to the Baylor and Jackson case, which we cited in our brief, which basically stands for the proposition that when a court of competent jurisdiction hands down a decision that is dispositive and adverse to your client and points out that part of the basis for its decision is an omission by you as the attorney. I'm looking at your brief where you cite this thing from the circuit court, and it says defendant Tyler was properly noticed through his attorney's record of the hearing. Is there anything that's more specific than that? Because your counsel opposite is saying that just refers to sort of generic attorneys, which this client kept having several of, rather than the Shelton firm. That's my question. That's record 3017. I'm asking if there's something more specific. I would have to double-check the exact record cite. I know there was the notice of service itself was included in the record on appeal that listed the address that they sent to Mr. Shelton. I believe that's the evidence that's cited by it. I would submit, Your Honor, consistent with the point that I've been trying to make here, that regardless of that, even if Mr. Shelton is, even if there's some accuracy there, that it's referring to some other attorney. Well, it doesn't matter, because he obviously argued to the Mississippi Supreme Court that his firm didn't give notice, which is why the Mississippi Supreme Court explicitly rejected that. I mean, so he had to have understood that in the court of appeals. Precisely, Your Honor. Whether there's truth to the lack of service argument, he is aware when he submits his application. But in both of those courts, the question was, it wasn't the case against him that was being appealed. It was the case against his client. The question is, did the client get noticed through an attorney? So if there were three attorneys out there and one of them got noticed, that would be good enough for both the circuit court and the Mississippi Supreme Court, but it wouldn't be good enough for saying Shelton got it. That's the point that I'm making. These were different issues. What was before that court was whether Tyler, through his attorneys, got noticed. And they said, yes, he did. But that's different from whether this guy is responsible for the screw-up. Well, his attorneys at that point are unquestionably Shelton and Associates. Well, they're questioning that. Didn't you say also the certificate of service showed that it had been sent to the Shelton address? Yes, Your Honor. So if there's some allegation that the mail didn't get there, that the address was incorrect, I'm not aware of that. But when the circuit court says your attorneys of record were noticed, and your attorneys of record are the law firm of Shelton and Associates, which is the firm to which this policy was issued, this is not Jason Shelton, attorney at law. It's Shelton and Associates, the law firm representing Paul Tyler. Mr. Shelton, as a reasonable attorney, has to appreciate at that point that there's a potential for a malpractice claim. If there are any further questions, I'll be happy to address them. But I think that the points have been, I think, thoroughly briefed, and I would pass the remainder of my time. All right, so thank you very much. Mr. Davis, rebuttal. Would you address that, please, the question of whether the circuit court clearly found it was Shelton, as opposed to an attorney, Shelton and Associates that got the notice? Your Honor, my recollection is the same that you cited, which was the citations that – But could that only mean one attorney? Your counsel officer just said that has to mean Shelton and Associates when they said attorneys of record. And you had earlier said it doesn't have to mean that. And obviously the record exhibits speak for themselves, but I believe if you do look at that certificate of service, it was not merely the Shelton firm that was noticed on that certificate of service. But is this policy issued to Shelton and Associates or to just Shelton? It is issued to the firm, but the other attorneys were not members of the firm. But Shelton and Associates is the policyholder. Correct, Your Honor. And Shelton and Associates is the certificate of service indicates that it was sent to Shelton and Associates. That is correct, Your Honor. That was an exhibit that's in the record. But you're saying there are other attorneys. There are other attorneys listed on that same certificate. But that has nothing to do with the kind of risk that may be involved, because the policy would cover his associates as well, correct? But not if they're at another firm. All of this feeds a genuine issue of material fact as to whether or not he actually received notice, which makes some rejection of the program. That cannot be the case. Because had there been a genuine issue, he would not have appealed. Sorry, he had to know that was an issue because he had to have briefed that to the Mississippi Supreme Court, which then wrote explicitly, no, Shelton is on the hook because they received notice. Which that opinion came out long after the application. I don't care if it came long after. The point is your client had to have briefed that to the Mississippi Supreme Court. They didn't pluck that fact out of thin air. And again, Your Honor, coming back to- Is that correct or not correct? What did the brief say? Your Honor, I do believe that that was the case. That issue was, in fact, briefed to the Mississippi Supreme Court. So he had to know. I do not know the date of that briefing. I don't know when that's included versus the date of the application. But the Mississippi Court of Appeals opinion clearly raised the issue in his mind. So he knew. Which was issued after the application was submitted and after the policy. Court of Appeals. Court of Appeals. Look, and again, Your Honor, the one- Imperium is still making the argument that the question is whether a claim might result. And I believe the appropriate standard based on one beacon is whether it would likely result. And the factors that the court would look to, I think the Atchley case is instructive on that point because the Atchley case says that there are at least two considerations aside from the merits of the claim. One is dissatisfaction of the client. And one is the lapse of time between the end of representation and filing of the claim. It goes on to say that these are not the only factors when considering these and other relevant factors. Now, there was some mention of dissatisfaction by the Chisholm parties. This has also been briefed. But the question is not whether they're dissatisfied with the result, which was the indication of the record and the summary judgment evidence in favor of my client. They're arguing as if they were upset with the actions of Mr. Shelton. To what degree do expert opinions in cases like this create a fact issue? I mean, what about that? That was one of my next points, Your Honor, that because we are dealing with the question of what a reasonable attorney would do and because for the same reason that it makes coverage illusory to say simple knowledge of a breach is sufficient, all these are tied in together, that what a reasonable attorney would do is subject to expert opinion. There's cases that I've cited in my briefing as to that point as to prior knowledge exclusions. Well, I didn't read those opinions, so I can't comment on them. But let me ask you a question. There is a principle that you can't mislead the insurance company and buy retroactive coverage for a claim you have reasonably, you know, you already know exists, right? Right. The material misrepresentation standard. Right. And isn't that what this provision is getting at? It is. It is, Your Honor. Because there's, I mean, you can still have claims made that spring up because of adverse things that happen during litigation, which are surprising, which is why one beacon is a perfectly reasonable decision. But when you know you missed these deadlines, it's not reasonable to conceal that from the insurance company. That's not the only factor in that test. It's also required to prove by clear and convincing evidence, the burden being on the insurance company, that it was material, meaning that they would not have issued the coverage. And the points that have already been argued, both in Chisholm and in Tyler, the only proof before this Court is that it would either result in an incident exclusion or potentially a higher premium. That it might also result in rescission is not carrying the burden of establishing by clear and convincing evidence that it would in fact have been rescinded. I don't understand that argument at all. Because suppose there had been no Harbin claim and you had these two claims, if Mississippi law allows the insurer to rescind, why can't the insurer go to court and ask for rescission? They did, Your Honor. I'm simply saying they didn't carry their burden to do so in this case. Because it requires clear and convincing evidence that they would in fact have not issued the policy. They didn't carry their burden to do that here. The only evidence is that they might have, but they might also have issued an incident exclusion or they might have just raised the premium. And that's the only proof before the Court. And that's significant in Chisholm specifically because if all they had done is say, if you'd said, oh, well, in Harbin there's also Chisholm, and they go, oh, okay, we'll exclude that, then that would not affect Tyler. Whereas if they'd said, oh, and we're not going to issue the policy at all, well, then that would affect Tyler. So, I mean, I think the Chisholm affecting Tyler issue is a fairly significant point here that the district court, frankly, didn't address. And there was a distinction by the testimony of the insurance company. With specific respect to Chisholm, they said the potential outcomes were a policy exclusion or not write the coverage. With respect to Tyler, they said policy exclusion, not write the coverage, or increase premium. In either instance, there were multiple alternatives that they didn't carry their burden to establish precision. Unless Your Honors have something further, I see I'm out of time. I would like to say that this case has been well argued by both sides. Thank you, Your Honor. Thank you. All right.